1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

JOSE ROBERTO COLATO,                     )
                                         )
            Petitioner,                  )          3:10-cv-00470-RCJ-VPC
                                         )
vs.                                      )          **ORDER**
                                         )
LeGRAND, *et al.*,                       )
                                         )
            Respondents.                 )
_____/

        This action is a *pro se* petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254, by a Nevada state prisoner.  This matter comes before the Court on the merits of the amended petition.

**I.  Procedural History**

        On May 13, 2004, the State filed a second amended information, charging petitioner with Count I, attempted murder, and Count II, trafficking in a controlled substance, Level II.  (Exhibit 9).[1] Petitioner filed a guilty plea memorandum.  (Exhibit 10).  Petitioner entered his guilty pleas on May 14, 2004.  (Exhibit 11).  On July 27, 2004, the court sentenced petitioner on Count I, to 60-240 months imprisonment, with a like consecutive term of imprisonment for the use of a deadly weapon;

_____

        [1]  The exhibits referenced in this order are found in the Court's record at ECF Nos. 7-11.

1   and on Count II, to 48-180 months, concurrent to Count I.  (Exhibit 14).  The court further ordered

2   restitution.  (*Id.*).  The Court filed the judgment of conviction on July 27, 2004.  (Exhibit 15).

3          Petitioner filed a notice of appeal.  (Exhibit 16).  The Nevada Supreme Court dismissed the

4   appeal as the notice was filed one day late.  (Exhibit 22).  Remittitur issued on November 30, 2004.

5   (Exhibit 23).  On February 23, 2005, petitioner filed his state post-conviction habeas petition.

6   (Exhibit 25).  Petitioner was appointed counsel, who supplemented the petition on March 23, 2006.

7   (Exhibit 34).  On June 28, 2006, the state district court dismissed the original petition and portions of

8   the supplemental petition.  (Exhibit 38).  The court ordered an evidentiary hearing on whether

9   petitioner was denied the right to a direct appeal.  (*Id.*).  On November 2, 2007, the state district

10  court held an evidentiary hearing.  (Exhibit 60).  On November 5, 2007, the court issued the written

11  order denying the remaining grounds of the supplemental petition.  (Exhibit 61).

12         Petitioner appealed the denial of his state post-conviction habeas petition.  (Exhibits 63, 64).

13  On December 3, 2008, the Nevada Supreme Court affirmed in part, reversed in part, and remanded.

14  (Exhibit 70).  The Nevada Supreme Court found that petitioner was denied his right to a direct

15  appeal and ordered the state district court to permit him to file a post-conviction petition raising

16  direct appeal issues pursuant to *Lozada v. State*, 110 Nev. 349, 871 P.2d 944 (1994).  (Exhibit 70).

17  Remittitur issued on December 30, 2008.  (Exhibit 72).

18         On February 4, 2009, petitioner dispatched a *pro se* federal habeas petition to this Court,

19  which was opened as Case No. 3:09-cv-00068-LRH-VPC.

20         On March 4, 2009, counsel for petitioner filed a *Lozada* petition in the state district court.

21  (Exhibit 73).  The state district court denied the *Lozada* petition by written order filed September 3,

22  2009.  (Exhibit 77).  Petitioner appealed from the denial of the *Lozada* petition.  (Exhibit 78).

23         On May 4, 2009, while the *Lozada* petition was still pending in the state court, respondents in

24  Case No. 3:09-cv-00068-LRH-VPC moved to dismiss the federal habeas petition as the claims were

25  unexhausted.  (ECF No. 8 in 3:09-cv-00068-LRH-VPC).  On October 27, 2009, this Court granted

26

1    respondents' motion to dismiss.  (ECF No. 17 in 3:09-cv-00068-LRH-VPC).  The Court dismissed

2    the petition without prejudice to allow petitioner to file a new habeas corpus action after exhausting

3    his state court remedies.  (*Id.*).

4         On June 9, 2010, the Nevada Supreme Court affirmed the denial of petitioner's state *Lozada*

5    petition.  (Exhibit 94).  Remittitur issued on July 6, 2010.  (Exhibit 95).

6         On July 25, 2010, petitioner dispatched his federal habeas petition to this Court.  (ECF No. 4,

7    at p. 1).  Respondents moved to dismiss the petition.  (ECF No. 6).  On March 21, 2011, petitioner

8    filed an amended habeas corpus petition.  (ECF No. 19).  This Court denied the motion to dismiss

9    without prejudice and directed respondents to file a response to the amended petition.  (ECF No. 23).

10   Respondents have filed an answer and petitioner has filed a traverse.  (ECF Nos. 26 & 27).

11   Additionally, petitioner has filed a request for judicial notice (ECF No. 29), which respondents

12   oppose (ECF No. 30).

13   **II.  Petitioner's Request for Judicial Notice (ECF No. 29)**

14        Petitioner requests that this Court take judicial notice of the United States Supreme Court

15   cases of *Lafler v. Cooper*, – U.S. —, 132 S.Ct. 1376 (2012), and *Missouri v. Frye*, — U.S. —, 132

16   S.Ct. 1399 (2012).  Petitioner seeks judicial notice of these two cases pursuant to Rule 201 of the

17   Federal Rules of Evidence (FRE).  (ECF No. 29).  Petitioner then proceeds to raise new claims not

18   presented to this Court in the amended petition.

19        Rule 201 permits judicial notice of "adjudicative facts" only, not legislative facts.  FRE

20   201(a).  Adjudicative facts are limited to facts that are not subject to reasonable dispute because they

21   are generally known within the trial court's territorial jurisdiction or can be accurately and readily

22   determined from alternate sources.  FRE 201(b).  The cases cited by petitioner do not fall within the

23   "adjudicative facts" provision of FRE 201.  Rule 201 has no application in this case, and petitioner's

24   motion is denied.

25   / / / / / / / / / / /

26                                             3

1

**III.  Federal Habeas Corpus Standards**

2      The Antiterrorism and Effective Death Penalty Act ("AEDPA"), at 28 U.S.C. § 2254(d),

3  provides the legal standard for the Court's consideration of this habeas petition:

4              An application for a writ of habeas corpus on behalf of a person in
               custody pursuant to the judgment of a State court shall not be granted
5              with respect to any claim that was adjudicated on the merits in State
               court proceedings unless the adjudication of the claim –
6
               (1) resulted in a decision that was contrary to, or involved an
7              unreasonable application of, clearly established Federal law, as
               determined by the Supreme Court of the United States; or
8
               (2) resulted in a decision that was based on an unreasonable
9              determination of the facts in light of the evidence presented in the State
               court proceeding.
10

11      The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications

12  in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect

13  to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693-694 (2002).  A state court

14  decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C.

15  § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme

16  Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from

17  a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme

18  Court's] precedent." *Lockyer v. Andrade,* 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor,* 529

19  U.S. 362, 405-406 (2000) and citing *Bell v. Cone,* 535 U.S. 685, 694 (2002)).  The formidable

20  standard set forth in section 2254(d) reflects the view that habeas corpus is "'a guard against extreme

21  malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction

22  through appeal." *Harrington v. Richter*, 562 U.S. — , —, 131 S.Ct. 770, 786 (2011) (quoting

23  *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)).

24      A state court decision is an unreasonable application of clearly established Supreme Court

25  precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct

26  governing legal principle from [the Supreme Court's] decisions but unreasonably applies that

4

principle to the facts of the prisoner's case." *Lockyer v. Andrade,* 538 U.S. at 75 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than merely incorrect or erroneous; the state court's application of clearly established federal law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409). In determining whether a state court decision is contrary to, or an unreasonable application of federal law, this Court looks to the state courts' last reasoned decision. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000), *cert. denied*, 534 U.S. 944 (2001).

In a federal habeas proceeding, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the burden set in § 2254(d) and (e) on the record that was before the state court. *Cullen v. Pinholster*, 131 S.Ct. 1388, 1400 (2011).

**IV. Discussion**

   **A. Ground 1**

Petitioner claims the following: "The district court erred in its findings of fact, conclusions of law, and judgment when finding trial counsel effective under *Strickland* standards when she did not fully explain that [sic] the weapon enhancement for attempted murder with the use of a deadly weapon." (ECF No. 19, at p. 3). Petitioner further alleges that trial counsel advised him that he would receive one single sentence for two counts and the weapons enhancement. (*Id.*, at p. 4). Petitioner alleges that he was confused by the language in the plea agreement. He alleges that no one ever told him that he faced a potential penalty of forty years imprisonment. He asserts that because neither the trial court nor his counsel advised him that the weapons enhancement would run consecutive to the attempted murder change, his plea is involuntary. (*Id.*).

1   Under *Strickland v. Washington*, 466 U.S. 668 (1984), a petitioner must show, first, that

2   counsel's representation fell below an objective standard of reasonableness, based on prevailing

3   professional norms. *Id.* at 688-90. Second, the petitioner must demonstrate that the identified acts

4   or omissions of counsel prejudiced his defense. He must establish "a reasonable probability that, but

5   for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at

6   694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome."

7   *Id.* The application of the *Strickland* test where ineffectiveness of counsel is alleged to invalidate a

8   plea has been defined as follows:

9   [T]he two-part *Strickland v. Washington* test applies to challenges to
    guilty pleas based on ineffective assistance of counsel. In the context
10  of guilty pleas, the first half of the *Strickland v. Washington* test is
    nothing more than a restatement of the standard of attorney
11  competence already set forth in *Tollett v. Henderson, supra*, and
    *McMann v. Richardson, supra*. The second, or "prejudice,"
12  requirement, on the other hand, focuses on whether counsel's
    constitutionally ineffective performance affected the outcome of the
13  plea process. In other words, in order to satisfy the "prejudice"
    requirement, the defendant must show that there is a reasonable
14  probability that, but for counsel's errors, he would not have pleaded
    guilty and would have insisted on going to trial.
15
16  *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). The modified *Strickland* prejudice standard in guilty plea

17  cases asks whether there is a probability that, but for counsel's alleged errors, the defendant would

18  not have pleaded guilty, but would have insisted on going to trial. *Langford v. Day*, 110 F.3d 1380,

19  1387 (9th Cir. 1997).

20  Under federal law, to be valid, a guilty plea must be knowing, voluntary, and intelligent. *U.S.

21  v. Brady*, 397 U.S. 742, 748 (1970). A guilty plea must represent a voluntary and intelligent choice

22  among alternative courses of action open to a defendant. *Hill v. Lockhart,* 474 U.S. 52, 56 (1985).

23  Advice for a guilty plea does not require a description of every element of the offense. *Bargas v.

24  Burns*, 179 F.3d 1207, 1216 (9th Cir. 1999) (citation omitted). The court looks to what a defendant

25  reasonably understood at the time of the plea. *U.S. v. Quan*, 789 F.2d 711, 713 (9th Cir. 1986). The

26  record must demonstrate that the defendant understands that he is waiving his privilege against self-

6

incrimination, his right to a jury trial, and his right to confront accusers. *Boykin v. Alabama*, 395

U.S. 238, 243 (1969). "Solemn declarations in open court carry a strong presumption of verity."

*Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977); *see also United States v. Anderson*, 993 F.2d 1435,

1438 (9th Cir. 1993) (defendant's statements, made in open court at time of his plea, are entitled to

great weight).

In the instant case, the guilty plea memorandum set for the plea negotiations, in relevant part,

as follows:

> 6. I understand that the consequences of my plea of guilty as to Count
> I are that I may be imprisoned for a period fo 2 to 20 years in the
> Nevada State Prison plus an additional equal consecutive sentence of 2
> to 20 years in the Nevada State Prison for the weapons enhancement
> and that I am not eligible for probation.
>
> I further understand that the consequences of my plea of guilty as to
> Count II are that I may be imprisoned for a period of 2 to 15 years in
> the Nevada State Prison and that I am not eligible for probation.  I may
> also be fined up to $100,00.00.  The sentence on each count may be
> concurrent or consecutive to one another.

(Exhibit 10, at p. 3).  The agreement further stated that the state district court was not bound by the

agreement of the parties and that the final sentence was solely determined by the court.  (Exhibit 10,

at p. 5).  Petitioner signed this agreement.  (*Id.*, at p. 6).

During the plea colloquy, petitioner acknowledged that he read and wrote English; that he

had read the plea memorandum; that he discussed the agreement with his attorney; that he

understood what the agreement said; and that he agreed with all of the terms of the agreement.

(Exhibit 11, at p. 5).  As to Count I, attempted murder, the sentencing court asked petitioner: "Do

you understand that the maximum penalty in that case is 20 years in the Nevada State Prison, with a

like additional consecutive sentence of 20 years in the Nevada State Prison?" (*Id.*, at p. 8).

Petitioner stated that he understood.  (*Id.*).  The court continued as to Count II, trafficking in a

controlled substance: "Do you further understand that on Count II, the maximum sentence in that

case is 15 years in the Nevada State Prison with a fine of up to $100,000?" (*Id.*, at pp. 8-9)  Again,

petitioner answered in the affirmative.  (*Id.*, at p. 9).  Petitioner further stated that he had sufficient

time to discuss the case with his attorney and he was satisfied with counsel's representation."  (*Id.*, at

pp. 9-10).  Petitioner stated that he was pleading guilty freely and voluntarily and he had not been

promised anything for his pleas.  (*Id.*, at p. 10).  After petitioner pled guilty to both counts, the

sentencing court found that: "Mr. Colato understands the nature of the offenses charged, the

consequences of his plea, he had made a knowing, voluntary and intelligent waiver of his

constitutional rights; and the Court will accept his guilty plea on both counts . . . ."  (*Id.*, at p. 11).

During the state evidentiary hearing on the first state habeas petition, petitioner's trial

counsel, Lyn Beggs, testified that two days before entry of the plea, she met with petitioner and

explained to him that the weapons enhancement was a mandatory enhancement and there was

nothing she could do about it.  (Exhibit 60, at pp. 65-66).  She testified that she did not tell petitioner

that the weapons enhancement could run concurrent to the other sentences.  (*Id.*, at p. 66).  She

testified that she explained to petitioner that the judge had no alternative but to run the weapons

enhancement sentence consecutively, but that as to Count II, the plea agreement provided for that

sentence to run concurrently with Count I.  (*Id.*).  Ms. Begs testified that petitioner appeared to

understand all of the ramifications of the offer that he ultimately pled to, after reviewing the plea

agreement with petitioner.  (*Id.*).  In addressing this claim, the Nevada Supreme Court ruled as

follows:

> First, Colato contends that the district court erred by finding that counsel was not ineffective for failing to adequately explain that the deadly weapon enhancement must run consecutively to the underlying count of attempted murder.  Colato claims that, as a result, he did not enter his plea knowingly, intelligently, and voluntarily.  We disagree.
>
> At the evidentiary hearing, Colato's former counsel testified that she explained to him, prior to the entry of his guilty plea, that the deadly weapon enhancement must run consecutively to the underlying charge. Counsel stated that "Colato appeared to understand all of the ramifications of the offer that he ultimately pled to."  Counsel testified that she reviewed the written plea agreement with Colato, and the agreement, signed by Colato, stated that the sentence imposed for the use of a deadly weapon would run consecutively to the term imposed

8

1

2

> for the attempted murder. Our review of the plea canvass reveals that the district court also informed Colato about the consecutive nature of the deadly weapon enhancement.

3

4

5

6

7

> In its order denying the petition, the district court found that Colato did not receive ineffective assistance of counsel and that he was properly advised prior to the entry of his guilty plea. The district court's factual findings are entitled to deference when reviewed on appeal. Colato has not demonstrated that the district court's findings of fact are not supported by substantial evidence or are clearly wrong. Moreover, Colato has not demonstrated that the district court erred as a matter of law. Therefore, we conclude that the district court did not err by rejecting this claim.

8   (Exhibit 70, at pp. 2-3) (footnotes omitted). The factual findings of the state court are presumed

9   correct. 28 U.S.C. § 2254(e)(1). Counsel was not ineffective under the deferential *Strickland*

10  standard. Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's ruling

11  was contrary to, or involved an unreasonable application of, clearly established federal law, as

12  determined by the United States Supreme Court, or that the ruling was based on an unreasonable

13  determination of the facts in light of the evidence presented in the state court proceeding. The Court

14  denies habeas relief on Ground 1 of the amended petition.

15  **B. Ground 2**

16  Petitioner claims: "The district court erred in its finding when it was determined that trial

17  counsel, the chief appellate counsel, and retained counsel failed to perfect an appeal, despite Colato's

18  requests." (ECF No. 19, at p. 7).

19  The *Strickland* standard also applies to claims of ineffective appellate counsel. *Smith v.*

20  *Robbins*, 528 U.S. 259, 285 (2000). Appellate counsel has no constitutional duty to raise every non-

21  frivolous issue requested by the client. *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983). To state a

22  claim of ineffective assistance of appellate counsel, a petitioner must demonstrate: (1) that counsel's

23  performance was deficient in that it fell below an objective standard of reasonableness, and (2) that

24  the resulting prejudice was such that the omitted issue would have a reasonable probability of

25  success on appeal. *Id.* "Experienced advocates since time beyond memory have emphasized the

26

9

1   importance of winnowing out weaker arguments on appeal and focusing on one central issue if

2   possible, or at most on a few key issues. *Id*. at 751-52.  Petitioner must show that his counsel

3   unreasonably failed to discover and file nonfrivolous issues. *Delgado v. Lewis*, 223 F.3d 976, 980

4   (9th Cir. 2000).  It is inappropriate to focus on what could have been done rather than focusing on the

5   reasonableness of what counsel did. *Williams v. Woodford*, 384 F.3d 567. 616 (9th Cir. 2004)

6   (citation omitted).

7       Under Nevada law, if a state court finds that the petitioner was denied the right to a direct

8   appeal, the petitioner is permitted to file a *Lozada* petition. *Lozada v. State*, 110 Nev. 349, 871 P.2

9   944 (1994).  Within that petition, the petitioner may raise all of his direct appeal issues as if they

10   were raised on direct appeal. *Id.*  In the instant case, petitioner was given a full opportunity to raise

11   his direct appeal issues.  Petitioner filed a state *Lozada* petition, through appointed counsel, in which

12   he was permitted to raise all direct appeal claims.  (Exhibit 73).  Petitioner's *Lozada* claims were

13   considered by the state district court and the Nevada Supreme Court.  (Exhibits 77 & 94).  Petitioner

14   received the full relief available under state law.

15       Additionally, petitioner requests a conditional writ pursuant to *Lozada v. Deeds*, 964 F.2d

16   956 (9th Cir. 1992) (*Lozada II*), with the writ to order release from state custody unless the state

17   allows him to take a delayed appeal within a reasonable time.  (ECF No. 19, at p. 8).  In *Lozada II*,

18   the Ninth Circuit held that "prejudice is presumed under *Strickland* if it is established that counsel's

19   failure to file a notice of appeal was without the petitioner's consent." *Lozada II*, 964 F.2d at 958.

20   However, this strict holding of *Lozada II* is no longer good law.  In *Roe v. Flores-Ortega*, the United

21   States Supreme Court specifically rejected *Lozada II* and similar case holdings that counsel must file

22   a notice of appeal unless the defendant specifically instructs otherwise, and the failure to do so is *per*

23   *se* deficient.  528 U.S. 470, 478 (2000).  The Court found that such a *per se* rule was inconsistent

24   with the rule in *Strickland* that the performance inquiry must be a circumstance-specific

25   reasonableness inquiry. *Id.* (citing *Strickland*, 466 U.S. at 688).  As such, petitioner's reliance on

26

1    *Lozada II* is without merit and the claim is denied.  As stated, petitioner filed his *Lozada* petition, in

2    which he was permitted to raise all direct appeal claims, in both the state district court and the

3    Nevada Supreme Court.  Petitioner received the full measure of relief under state law and his federal

4    habeas claim on Ground 2 is denied.

5        **C.  Ground 3**

6        Petitioner asserts:  "The district court erred in its findings when Colato's appellate issue

7    would have been the prosecutor's breach of the plea bargain, despite receiving concurrent time."

8    (ECF No. 19, at p. 10).  Petitioner alleges that pursuant to the plea negotiations, as reflected in the

9    guilty plea memorandum and entry of the guilty plea, the State agreed it would be free to argue for an

10   appropriate sentence but would recommend that Counts I and II run concurrently.  (*Id.*, at p. 10).

11   Petitioner asserts that, during sentencing, the prosecutor sought consecutive time.  Petitioner alleges

12   that trial counsel, appellate counsel, and retained counsel were ineffective and that the prosecutor

13   breached the plea bargain during the sentencing hearing.  (*Id.*, at p. 11).

14       Pursuant to the guilty plea memorandum, the State agreed to recommend concurrent time as

15   to Counts I and II, but the State would be free to argue at sentencing.  (Exhibit 10).  The presentence

16   investigation report also reflects this plea negotiation.  (Exhibit 12, at p. 5).  At sentencing, the State

17   argued for 96 months on Count I, and would "concur with the recommendation on Count II, and as

18   indicated in the plea agreement, have no objection to those two counts running consecutive."

19   (Exhibit 14, at p. 7).  During the sentencing hearing, the court gave petitioner the opportunity to

20   speak, but he never said anything about the possible sentences.  (*Id.*, at pp. 15-16).  The state district

21   court sentenced petitioner on Count I, to 60-240 months with a like consecutive term of 60-240

22   months for the use of a deadly weapon, and on Count II, to 48-180 months, to run concurrently to

23   Count I.  (*Id.*, at p. 16).  The prosecutor stated that she did not object to consecutive sentences, but

24   further stated that she concurred with the plea agreement.  It is apparent from the record that the

25   prosecutor concurred with the plea agreement but misspoke regarding consecutive versus concurrent

26

1  sentences as to Counts I and II.  Nevertheless, the terms of the written plea agreement were met.  The

2  sentencing court ordered Counts I and II to run concurrent to one another.  Petitioner received the

3  benefit of the bargain and his sentence was consistent with the written plea agreement.  In addressing

4  this claim, the Nevada Supreme Court held:

5          Colato also contends that the State breached the guilty plea agreement.
           The state agreed to concurrent sentences on each count; however,
6          during sentencing, the prosecutor stated, "We concur with the
           recommendation on Count II and, as indicated in the plea agreement,
7          have no objection to those two counts running consecutive."  Colato
           did not object to this statement.  We conclude that the State's breach
8          does not constitute plain error because Colato concedes that he
           received the benefit of his bargain and was not prejudiced by the
9          prosecutor's statement.  *See Puckett v. United States*, 129 S.Ct. 1423,
           1432-33 (2009); *Sullivan v. State*, 115 Nev. 383, 387-88 n.3, 990 P.2d
10         1258, 1260-61 n.3 (1999).

11 (Exhibit 94, at pp. 1-2).  The factual findings of the state court are presumed correct.  28 U.S.C.

12 § 2254(e)(1).  Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's

13 ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as

14 determined by the United States Supreme Court, or that the ruling was based on an unreasonable

15 determination of the facts in light of the evidence presented in the state court proceeding.  The Court

16 denies habeas relief on Ground 3 of the amended petition.

17         **D.  Ground 4**

18         Petitioner asserts the following issue: "Whether the district court abused its discretion when

19 finding Colato's appellate issue was without merit regarding the procedures leading up to his entry of

20 plea because of the failure to advise the weapon enhancement doubled the penalty?"  (ECF No. 19, at

21 p. 13).  Petitioner alleges that he was not advised during the district court's plea canvass that he

22 faced a potential penalty of up to forty years for attempted murder with the use of a deadly weapon,

23 and therefore, the procedures leading up to the plea were deficient.  Petitioner alleges that the state

24 district court failed to inform him of the double penalty he faced and that he was misled since he

25 believed he would only receive one sentence that would run concurrent.  (*Id.*, at p. 14).

26

1    As discussed earlier in this order, in the guilty plea memorandum, which petitioner signed

2    and acknowledged reading, by pleading guilty to Count I, attempted murder, petitioner faced a

3    possible punishment of imprisonment for a period of "2 to 20 years in the Nevada State Prison plus

4    an additional equal consecutive sentence of 2 to 20 years in the Nevada State Prison for the weapons

5    enhancement." (Exhibit 10, at p. 3).  During the plea canvass, petitioner acknowledged that he

6    understood the terms of the plea memorandum.  (Exhibit 11, at p. 5).  The court specifically asked

7    petitioner regarding Count I: "Do you understand that the maximum penalty in that case is 20 years

8    in the Nevada State Prison, with a like additional consecutive sentence of 20 years in the Nevada

9    State Prison?"  (*Id.*, at p. 8).  Petitioner stated that he understood.  (*Id.*).  The court clearly advised

10   petitioner during the plea canvass that, as to Count I, he faced a maximum possible sentence of

11   twenty years, plus an additional consecutive sentence of twenty years.  Petitioner was informed of the

12   possible punishments he faced by the district court during the plea colloquy and by acknowledgment

13   of signing and understanding the guilty plea memorandum.

14   On appeal from the denial of the original state habeas petition, the Nevada Supreme Court

15   found: "Our review of the plea canvass reveals that the district court also informed Colato about the

16   consecutive nature of the deadly weapons enhancement."  (Exhibit 70, at pp. 2-3).  In addressing this

17   issue, the state district court found:

18   Petitioner's third issue claims that the procedure leading to his guilty
     pleas was defective because the Court did not inform him of the
19   mandatory consecutive weapons enhancement.  The issue is belied by
     the record as petitioner signed a *Guilty Plea Memorandum* as well as
20   this Court conducting a meaningful canvass regarding the potential
     sentence petitioner may receive, including the consecutive weapons
21   enhancement.  Additionally, the Nevada Supreme Court has previously
     determined that petitioner was adequately informed of the potential
22   sentences he may receive pursuant to the weapons enhancement.  As
     such, this issue is precluded by the law of the case and this Court
23   declines to address it.

24   (Exhibit 77, at pp. 2-3).  On appeal from the denial of the *Lozada* petition, the Nevada Supreme

25   Court found the claim was substantially addressed previously in the order affirming in part and

26

                                                    13

1  reversing in part the original habeas petition, and therefore was barred by the doctrine of the law of

2  the case.  (Exhibit 94, at p. 1).  The factual findings of the state court are presumed correct.  28

3  U.S.C. § 2254(e)(1).  Petitioner has failed to meet his burden of proving that the Nevada Supreme

4  Court's ruling was contrary to, or involved an unreasonable application of, clearly established federal

5  law, as determined by the United States Supreme Court, or that the ruling was based on an

6  unreasonable determination of the facts in light of the evidence presented in the state court

7  proceeding.  The Court denies habeas relief on Ground 4 of the amended petition.

8  **V.  Certificate of Appealability**

9        In order to proceed with his appeal, petitioner must receive a certificate of appealability.  28

10  U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1;  *Allen v. Ornoski,* 435 F.3d 946, 950-951

11  (9th Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001).  District

12  courts are required to rule on the certificate of appealability in the order disposing of a proceeding

13  adversely to the petitioner or movant, rather than waiting for a notice of appeal and request for

14  certificate of appealability to be filed.  Rule 11(a) of the Rules Governing Section 2254 and 2255

15  Cases.  Generally, a petitioner must make "a substantial showing of the denial of a constitutional

16  right" to warrant a certificate of appealability.  28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S.

17  473, 483-84 (2000).  "The petitioner must demonstrate that reasonable jurists would find the district

18  court's assessment of the constitutional claims debatable or wrong."  *Id.* (*quoting Slack*, 529 U.S. at

19  484).  In order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the

20  issues are debatable among jurists of reason; that a court could resolve the issues differently; or that

21  the questions are adequate to deserve encouragement to proceed further.  *Id.*  In this case, no

22  reasonable jurist would find this Court's denial of the petition debatable or wrong.  The Court

23  therefore denies petitioner a certificate of appealability.

24  / / / / / / / / / / /

25  / / / / / / / / / /

26

1   **VI.  Conclusion**

2       **IT IS THEREFORE ORDERED** that petitioner's motion for judicial notice (ECF No. 29)

3   is **DENIED.**

4       **IT IS FURTHER ORDERED** that the amended petition for a writ of habeas corpus is

5   **DENIED IN ITS ENTIRETY**.

6       **IT IS FURTHER ORDERED** that petitioner is **DENIED A CERTIFICATE OF**

7   **APPEALABILITY.**

8       **IT IS FURTHER ORDERED** that the Clerk **SHALL ENTER JUDGMENT**

9   **ACCORDINGLY.**

10       Dated this 6th  day of September, 2013.

11

12

13       UNITED STATES DISTRICT JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

15